**Stephen LeSATZ, Jr., Plaintiff–Appellant,**

v.

**Joseph M. DESHOTELS, Marsha Deshotels, John B. Dorsey, Mary G. Dorsey, and The City of Cherry Hills Village, Colorado, Defendants–Appellees.**

No. 86CA1087.

Colorado Court of Appeals, Div. I.

Feb. 11, 1988.

Rehearing Denied March 17, 1988.

Certiorari Denied July 5, 1988.

Stephen LeSatz, Jr., pro se.

Elrod, Katz, Preeo & Look, P.C., Jeffrey L. Dykes, Denver, for defendants-appellees.

PIERCE, Judge.

Plaintiff, Stephen LeSatz, Jr., appeals from the order of the trial court dismissing his claims for access by road or easement to a parcel of realty located in Cherry Hills Village. We affirm.

In October of 1980, plaintiff purchased a tract of vacant land in Cherry Hills Village. The parcel is divided by the Highline Canal, which runs through the parcel in an east-west direction before turning north, leaving a triangular shaped portion of approximately one-third of an acre separated from the southern portion of plaintiff's tract. The triangular fragment is bounded on the north by defendants Deshotels' property, and to the east by defendants Dorseys' land. The Highline Canal forms the south and west border of the triangle. The portion of plaintiff's property lying to the south of the canal has permanent access to and from a dedicated public street.

Prior to 1950, Cherry Hills Village was the owner of a platted (but unbuilt) public way designated as Thalia Street. Running north and south, Thalia Street abutted the Deshotels' and plaintiff's properties to the west, and the Dorseys' property to the east, intersecting with Mansfield Avenue to the north. In September of 1950 and again in July of 1951, Cherry Hills adopted ordinances vacating Thalia Street. Both these ordinances were made of record, and plaintiff stipulated at trial that he was aware of the vacation ordinances prior to his purchase. In March of 1981, the Deshotels constructed a fence across the northern

outlet of Thalia Street along Mansfield Avenue. Plaintiff brought this action seeking to nullify the vacation ordinances, or alternatively, to impose an easement for access along Thalia Street to the triangular portion of his property north of the canal.

■ The question is whether plaintiff is entitled to access because a portion of his property does not have a road through or alongside it; that is, whether the parcel is landlocked and access to it cannot be obtained from the other portions of plaintiff's property across the canal.

Plaintiff relies on § 43–2–303(2), C.R.S. (1984 Repl.Vol. 17) as authority for his argument that the vacation ordinances of Cherry Hills Village are void. This section provides that:

"No roadway or part thereof shall be vacated so as to leave any land adjoining said roadway without an established public road connecting said land with another established road."

Plaintiff's argument, however, ignores the plain provisions of § 43–2–303(4), C.R.S. (1984 Repl.Vol. 17) which state that an instrument of vacation remaining of record for a period of seven years shall be prima facie evidence of an effective vacation of former roadways, unless during such period an action is commenced to annul or set aside the vacation. *See also* § 43–2–304, C.R.S. (1984 Repl.Vol. 17).

It is undisputed that the vacation ordinances at issue were properly recorded and have remained of record for the required period. There is likewise no suggestion the statutory period was tolled by the commencement of any action to annul, save the case before us. Hence, this statute of limitations creates a prima facia case in favor of its proponents, and our review of the record reveals insufficient evidence for the trial court to have concluded that the presumption was overcome.

■ In any event, the vacation of the street was a legislative act, final upon enactment, which vested title to the lands included within the street in the owners of the abutting land, including, of course, plaintiff's predecessors in ownership. *Sut-*

*phin v. Mourning,* 642 P.2d 34 (Colo.App. 1981); § 43–2–302(1), C.R.S. (1984 Repl. Vol. 17). Furthermore, § 38–41–111, C.R.S. (1982 Repl.Vol. 16A) places an unequivocal seven-year limitation upon maintaining an action against persons in possession attacking the validity of "any instrument of conveyance ... executed by ... any public official whatsoever" when such recorded instrument is the source of title or right to the possessor or his predecessors. This curative title statute bars suits asserting defects which would render the conveyance inoperative unless brought within the period of limitation. Hence, it bars plaintiff's action here.

Plaintiff finally contends he either retains as an abutting owner a private easement for the use of Thalia Street, or is entitled to a way of necessity of access.

Plaintiff's insistence upon the creation of a way of necessity based upon Colo. Const. art. II, § 14 is inappropriate. As plaintiff admits, the procedures for commencing such a private condemnation action pursuant to § 38–1–101 et seq., C.R.S. (1982 Repl.Vol. 16A) have not been followed.

As to the next of these contentions, plaintiff relies upon *Denver Union Terminal Ry. Co. v. Glodt,* 67 Colo. 115, 186 P. 904 (1919); *Denver Union Terminal Ry. Co. v. Freund,* 67 Colo. 363, 186 P. 909 (1919); *Minnequa Lumber Co. v. City & County of Denver,* 67 Colo. 472, 186 P. 539 (1919); and *Radinsky v. Denver,* 159 Colo. 134, 410 P.2d 644 (1966). These cases were all decided under distinguishable facts which, upon a close examination, reveal that the landowner had acquired a private easement in a public street or highway which was, by act of the municipality, condemned or obstructed, with the result that compensation was required in order for the taking of the easement to be accomplished by due process of law.

■ When, however, a landowner asserts a private right of way in a subsequently abandoned or vacated public street or highway, it is recognized that the only easements which survive or arise are those reasonably necessary for means of ingress and egress. *Rexroat v. Thorell,* 89 Ill.2d

221, 60 Ill.Dec. 438, 433 N.E.2d 235 (1982), *cert. denied,* 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 79 (1982). *Accord Mason v. State,* 656 P.2d 465 (Utah 1982). Thus, as early determined in this state, this rule articulates the principle that while a right of access has no tangible existence, it is necessary to the satisfactory and beneficial use of the land. *Denver v. Bayer,* 7 Colo. 113, 2 P. 6 (1883). A parallel rule does not look upon such an implied easement with favor, constituting, as it does, an unexpressed charge upon the free use of another's land. *See Wagner v. Fairlamb,* 151 Colo. 481, 379 P.2d 165 (1963), *cert. denied,* 375 U.S. 879, 84 S.Ct. 149, 11 L.Ed.2d 110 (1963); *Collins v. Ketter,* 719 P.2d 731 (Colo.App. 1986).

■ A showing of absolute or strict necessity is not required to create or maintain an easement for access. *Smith v. Griffin,* 14 Colo. 429, 23 P. 905 (1890). While absolute physical impossibility of reaching the alleged dominant estate is not a requisite, an easement by implication is not sanctioned if available alternatives offering reasonable means of ingress and egress exist. *Rexroat v. Thorell, supra.* What is reasonable access is a question for the court to determine in each case. *Crystal Park Co. v. Morton,* 27 Colo.App. 74, 146 P. 566 (1915).

■ As plaintiff stipulated at trial, and repeats here, he can obtain a license for the construction of a foot or vehicular bridge from the Denver Board of Water Commissioners. There is no evidence that the cost of such a construction is prohibitive, or grossly in excess of the value of the estate itself, as was the case in *Smith v. Griffin, supra.* Nor is plaintiff's parcel a business enterprise, as was emphasized in *Denver v. Bayer, supra,* the land here having been vacant since the date of vacation, and zoned for residential uses. Moreover, plaintiff was aware, by record notice, of the lack of preferred access. Indeed, plaintiff testified as to his actual notice in that he had been informed by his title insurance company of the lack of access, and had contacted the defendants regarding the problem, all prior to purchase.

Under these facts, we agree with the trial court that plaintiff did not sustain his burden of proof of his right as a matter of law to access from his property to Thalia Street. *See Sall v. Colorado Springs,* 161 Colo. 297, 423 P.2d 11 (1966).

Judgment affirmed.

METZGER and CRISWELL, JJ., concur.