534 So.2d 875 (1988)
John M. PICCIOLO, Defender Yacht Corporation and Atlantic Aeromarine Associates, Inc., Appellants,
v.
Cleveland JONES, Jr., Caroline Jones, Frank Jones, Joyce Jones and Jones Boat Yard, Inc., Appellees.
No. 88-898.
District Court of Appeal of Florida, Third District.
December 6, 1988.
*876 Raab & Strader, Coral Gables, Joe V. Lumer, Miami, for appellants.
Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel and Sheila Wolfson, Miami, Akerman, Senterfitt & Eidson and Anthony J. O'Donnell, Jr., Orlando, for appellees.
Before HUBBART, BASKIN and JORGENSON, JJ.
BASKIN, Judge.
This is an appeal from a final judgment in which the trial court enjoined appellants from using the waterway owned by appellees. We agree with the trial court's reasoning and commend the clarity of the findings of fact and conclusions of law. The trial court found:
FINDINGS OF FACT
1. Plaintiffs, CLEVELAND JONES, JR., CAROLINE JONES, FRANK JONES and JONES BOAT YARD, INC. are the owners of a boat basin located since 1922 along the Miami Canal. A portion of Plaintiffs' property is submerged land adjoining the Palmer Lake rockpit.
2. The submerged land adjacent to Palmer Lake is privately owned by Plaintiffs, having been acquired from Maule Industries' Trustee in bankruptcy.
3. Defendants, JOHN M. PICCIOLO, LAUDERDALE ENTERPRISES, INC., DEFENDER YACHT CORP. and ATLANTIC AEROMARINE ASSOCIATES, INC. are an owner and two lessees of property bordering the Palmer Lake rockpit.
4. Plaintiffs' expert witness in the field of surveying, Alfred Mohr, testified that he had located the following historical records concerning the development of waterbodies in the area of where Jones Boat Yard and the Palmer Lake rockpit are located:
A. A federal General Land Office survey conducted in 1845 shows Sections 28 and 29 of the township where Jones Boat Yard and the Palmer Lake rockpit are now located as "Everglades" land and does not show any bodies of water in these sections.
B. A 1917 plat of the Miami Canal and Miami River shows no waterbody other than the Miami Canal in the area where Jones Boat Yard and Palmer Lake are now located.
C. A 1925 plat of Curtis Field Tract shows the Miami Canal as the only waterbody in the area where Jones Boat Yard and Palmer Lake are presently located.
D. A 1925 Hopkins Map shows a waterbody described as a drainage ditch and that was not previously shown on the 1917 plat, running north and south from the Miami Canal in the area where Jones Boat Yard is now located.
E. A 1936 Hopkins Map shows two changes in the water bodies in the area. First, only a short section of the drainage ditch remains where it connects with the Miami Canal. Second, the Palmer Lake rockpit now appears and is connected to the Miami Canal by the present day channel, which is just west of where the drainage ditch connected with the Miami Canal on the 1925 map.
F. A topographical survey based on data collected in 1939 shows "Palmer Lake Rockpits" with a channel connecting to the Miami Canal.
5. Cleveland Jones testified that he recalls dredging occurring in Palmer Lake when he was a child in the 1920's.
6. It is beyond dispute that today the Jones Boat Yard area is a waterbody that is navigable in fact. However, there is no evidence whatsoever in the record to support Defendants' claim that there was a navigable body of water in the Jones Boat Yard area in 1845. The only reasonable conclusion is that the water bodies in the area appearing after the 1845 survey are man-made.
7. Cleveland Jones testified that he observed Maule Industries blocking access *877 to the Palmer Lake rockpit by positioning barges across the entrance in approximately 1962.
8. Marvin Sokolow testified that he owns most of the submerged land of the Palmer Lake rockpit, including the area where Palmer Lake abuts Jones' submerged land that fronts on the Miami Canal.
9. Marvin Sokolow testified that each year he places a cable with a sign indicating his ownership of the submerged land under Palmer Lake across the entrance from Palmer Lake to the Miami Canal, and evidence was presented that Sokolow has given written notice to other property owners on the rockpit that they have no right to use his private property without his permission.
10. Cleveland Jones testified that he was granted a permit by Dade County, the Corps of Engineers, and State agencies to construct piers on his property adjacent to the Palmer Lake rockpit entrance, but has been denied a permit by the Corps of Engineers to construct a hydraulic lift in this area.
11. Cleveland Jones and Marvin Sokolow both testified that all Defendants have access to their property from a public road, and Defendants presented no evidence to contradict this testimony.
12. There was no evidence presented that any of the Defendants possess a deed or other duly written document from which an easement might be implied that would grant any Defendant a right to use JONES' private property.
CONCLUSIONS OF LAW
1. JONES' property is a man-made waterbody that is not sovereignty land because there is no evidence that it was a navigable waterbody in 1845. Odom v. Deltona, 341 So.2d 977 (Fla. 1977).
2. Although the Corps of Engineers has regulatory jurisdiction over the area, JONES' boat basin is private property to which there is no right of public access or use. Kaiser Aetna v. United States, 444 U.S. 164 [100 S.Ct. 383, 62 L.Ed.2d 332] (1979); Vaughn v. Vermilion Corp., 444 U.S. 206 [100 S.Ct. 399, 62 L.Ed.2d 365] (1979).
3. Defendants, JOHN M. PICCIOLO, DEFENDER YACHT CORP. and ATLANTIC AEROMARINE ASSOCIATES, INC., are not entitled to the beneficial use of the surface waters of JONES' boat basin by sole virtue of the fact that they own or lease portions of the contiguous Palmer Lake rockpit. Anderson v. Bell, 433 So.2d 1202 (Fla. 1983).
4. Defendants do not possess an implied easement granting them the right to use JONES' property because they have not met either of the two requirements for such an easement as set forth in Tortoise Island Communities, Inc. v. Moorings Association, Inc., 489 So.2d 22 (Fla. 1986) (adopting dissent in 460 So.2d 961, 966 (Fla. 5th DCA 1984).
The question before this court is whether the access channel to Palmer Lake is a sovereign waterway which must be kept open for public use. If the channel does not belong to the sovereign, but is privately owned, we must decide whether an easement permitting adjacent landowners to traverse the private waterway arises by implication. Appellants assert that the channel is a navigable waterway subject to the exclusive jurisdiction of federal law under the preemption doctrine. Appellees maintain the waterway is their private property. In our view, the answer depends on whether the access channel to Palmer Lake is a natural or an artificial waterway. Only a waterbody which was navigable in its natural state at the time Florida became a state in 1845 is subject to federal or state sovereignty. Odom v. Deltona Corp., 341 So.2d 977 (Fla. 1976).
The evidence indicates that in 1845, when Florida was admitted to the Union, the access channel to Palmer Lake, and Palmer Lake itself, were nonnavigable marshlands. The access channel to Palmer Lake did not become a navigable waterbody until well into the 20th century. Thus, although the parties agree that this waterway is now *878 navigable in fact,[1] it was not a navigable waterbody at the time of Florida's entrance into the Union, and is therefore not within the sovereign title of the State of Florida or of the United States. The fact that the waterway is subject to the regulatory power of the State of Florida and the United States Corps of Engineers does not conclude the matter; the power to regulate does not vest either the state or the federal government with sovereign title which would permit a taking for public use without payment to the owner of just compensation.[2]Kaiser Aetna v. United States, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979); Vaughn v. Vermilion Corp., 444 U.S. 206, 100 S.Ct. 399, 62 L.Ed.2d 365 (1979). We therefore hold that the trial court was correct in deciding that the access channel to Palmer Lake is not a sovereign waterbody and that Jones could restrict use of the channel.
The access channel to Palmer Lake was dredged in the early 1930's. It is an artificial waterbody which can be, and is, privately owned. Publix Super Markets, Inc. v. Pearson, 315 So.2d 98 (Fla. 2d DCA 1975) (riparian rights do not attach to artificial waterbodies). The Florida Supreme Court held in Anderson v. Bell, 433 So.2d 1202 (Fla. 1983), that "the owner of property that lies adjacent to or beneath a man-made, non-navigable water body is not entitled to the beneficial use of the surface waters of the entire body by sole virtue of the fact that he/she owns contiguous lands." Anderson 433 So.2d at 1204 (emphasis in original). To hold otherwise would defeat the financial expectations of the waterway owners.[3]Anderson 433 So.2d at 1205. Picciolo's ownership of land fronting on Palmer Lake does not afford him an absolute right to use the lake's privately owned access channel solely because the channel is contiguous to his property. This is not to say that Picciolo can never have a right to use the channel: he may obtain the right to use the property by contracting with Jones for a covenant or an easement.
Picciolo alleges that the trial court erred in holding that he does not have an easement by implication over the access channel to Palmer Lake. We find this argument to be without merit. To obtain an easement by implication, a landowner must demonstrate absolute necessity. Tortoise Island Communities, Inc. v. Moorings Ass'n, Inc., 489 So.2d 22 (Fla. 1986). Picciolo failed to meet that standard. In fact, the evidence shows that Picciolo has easy access to his property by public road. Thus, the trial court correctly ruled that an easement by implication does not exist.
For the foregoing reasons, we affirm the decision of the trial court.
AFFIRMED.
NOTES
[1] Waterbodies which are navigable in fact "include lakes, rivers, bays, or harbours, and all waters capable of practical navigation for useful purposes, whether affected by tides or not, and whether the water is navigable or not in all its parts towards the outside lines or elsewhere, or whether the waters are navigable during the entire year or not." Martin v. Busch, 93 Fla. 535, 112 So. 274 (1927). Waterbodies which are navigable in fact may be regulated by federal and state governments.
[2] Picciolo would have us decline to exercise jurisdiction over this matter on grounds that the federal regulation of the waterway preempts state law. We reject his argument. This lawsuit involves the power of the federal government to regulate navigable waterways. Because federal law does not preempt state law on this issue, the trial court was correct in excluding the testimony of Bertil Heimer of the Army Corps. of Engineers.
[3] Picciolo argues that it was error to exclude the testimony of three witnesses as to the economic impact of Jones' assertion of private ownership and its effect upon Picciolo's financial expectations. Anderson v. Bell, 433 So.2d 1202 (Fla. 1983), places the focus on the expectations of the owner of the waterbody, not upon those who question his dominion. The trial court committed no error in excluding that testimony.